540 So.2d 1116 (1989)
STATE of Louisiana
v.
Steven James FERGUSON.
No. 88 KA 0450.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*1117 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Matthew Barker, Thibodaux, for defendant and appellantSteven J. Ferguson.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
Defendant, Steven James Ferguson, was charged by bill of information with one count of forcible rape, in violation of LSA-R.S. 14:42.1, and one count of aggravated crime against nature, in violation of LSA-R.S. 14:89.1. Defendant was tried by a jury, which convicted him as charged. For the forcible rape, defendant was sentenced to imprisonment for a term of fifteen years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence; and for the aggravated crime against nature, defendant received a sentence of six years imprisonment at hard labor, without benefit of suspension of sentence, probation, or parole. The trial court ordered that the sentences be served consecutively.
Defendant has appealed, setting forth seven assignments of error, as follows:
1. The trial court erred by overruling defendant's objection to the testimony of the victim's sister regarding the victim's description of her attacker.
2. The trial court erred in overruling defendant's objection to Houma City Police Detective Richard Belanger's testimony as to the victim's description of her attacker.
3. The trial court erred by allowing the prosecutor to question defendant about the facts and circumstances of a previous criminal conviction of defendant.
4. The trial court erred by overruling defendant's objection to the prosecutor's questions to defendant regarding what type clothes defendant had worn during the period of time from the alleged attack of the victim until defendant's arrest.
5. The jury's verdicts are contrary to the law and the evidence.
6. The trial court erred by denying defendant's motion for post verdict judgment *1118 of acquittal and motion for new trial.
7. The trial court erred by imposing excessive sentences.
Assignment of error number six was not briefed on appeal and is, thereby, considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.[1]
The record reflects that the instant offenses occurred on October 1, 1986, shortly after 8:00 p.m. The offenses were committed in Terrebonne Parish against a female victim.[2]
The victim's testimony revealed that, on the day in question, she was walking home from a National Food Store located on Grand Caillou Road. While the victim was walking through the Honduras School yard, she heard someone say: "hey girl." She turned her head around and saw a man she later identified as defendant. The victim became frightened and started walking fast. Defendant asked her what was her name. The victim continued walking, quickening her pace. Defendant asked the victim if she wanted to smoke "a joint," and she answered in the negative. Defendant asked her if she knew where he could get a light. The victim replied in the negative and stated that she lived nearby and was going home.
Defendant grabbed the victim by her throat, picked her up, and carried her into a dark area between two portable structures on the school grounds. When defendant grabbed her, he told her he had a gun and was going to "blow her f'ing brains out" if she did not do what she was told. The victim did not see a gun and did not know if defendant actually had one. Defendant told the victim to disrobe; and, when she apparently either did not do so or did not disrobe quickly enough, defendant removed her clothes. Applying both of his hands to her head, defendant forced the victim to perform oral sex on him. According to the victim, defendant continued to tell her he had a gun. The victim was scared for her life. Defendant made the victim lie down, and he then vaginally raped her.
Thereafter, defendant made the victim get dressed and walk around to a water fountain. He told the victim he was going to Florida and for her to meet him at the National Food Store in an hour. The victim observed a bicycle approaching; and, as an apparent diversionary tactic, she told defendant to look at the bicycle. When defendant let go of the victim, she took off running to her mother's house.
When the victim got to her mother's house, she found her sister and her sister's husband there. The victim told her sister she had been raped. The victim was taken to the hospital, and the police were contacted. Houma City Police Detective Richard Belanger interviewed the victim at the hospital.
Defendant was arrested for these offenses on October 22, 1986. Thereafter, the victim went to the police station where she viewed photographs and identified defendant as her attacker. Additionally, the victim made a positive in-court identification of defendant.
ASSIGNMENTS OF ERROR NOS. ONE AND TWO:
By means of these assignments, defendant asserts that the trial court erred by overruling defendant's objections to the testimony of the victim's sister and Detective Belanger as to the victim's descriptions of her attacker. Defendant argues that *1119 the witnesses' testimony constituted hearsay and, thus, their testimony was inadmissible.
On direct examination of the victim's sister, she was asked if the victim had described her assailant. Defense counsel objected to the question. The state countered that the testimony would be an excited utterance or first complaint of a rape victim, and the trial court overruled the objection. The witness then testified that, when the victim came home, the victim told her that the assailant was wearing gray corduroy pants and that he looked like Steve.
The record reveals that the next witness to testify was Detective Richard Belanger. On direct examination, the following exchange occurred:
Q. About what time did you get to the hospital, Richard?
A. I received the complaint at 8:35 [p.m.]approximately 8:40 [p.m.], somewhere in that area.
Q. You got the complaint about 8:35 from the hospital?
A. Yes, sir.
Q. Did she give you a description of the man that she said had accosted her?
A. Yes, sir, she did.
Q. I am going to show you photographs well, give me the description she gave you.
A. She told me he was a white male subject about 5' 10" to 6'; slim build; shoulder length hair, parted down the middle neatly cut and trimmed and styled.
Initially, we note that, because defendant did not object at trial to Belanger's testimony as to the victim's description of her assailant, defendant's contentions on appeal (in reference to Belanger's testimony) constitute a basis for objection raised for the first time on appeal; and, hence, those contentions are not properly before this Court. See State v. Brown, 481 So.2d 679 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). However, in any event, we find that the testimony of the victim's sister as well as Belanger's testimony (regarding the victim's description of her attacker) were admissible under the excited utterance exception to the hearsay rule.
There are two basic requirements for the excited utterance exception. There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978); State v. Yochim, 496 So.2d 596 (La.App. 1st Cir.1986).
The attack perpetrated against the victim was clearly an event sufficiently startling to render normal reflective thought processes inoperative. The victim was abducted, had her life threatened, was made to perform oral sex, and was vaginally raped. The instant offenses had occurred shortly after 8:00 p.m. Within approximately ten minutes, the victim made her initial disclosure of the rape and described her assailant to her sister. Shortly thereafter the victim described her attacker to Belanger at the hospital. The testimony of both witnesses revealed that, when they spoke to the victim, she was crying, upset, and hysterical. There is no doubt the statements made to the witnesses were spontaneous reactions of the victim made by her shortly after the criminal attack. See State v. Krolowitz, 407 So.2d 1175 (La. 1981); State v. Yochim, supra.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends that the trial court erred by allowing the prosecutor to question defendant about the facts and circumstances of a previous criminal conviction.
Initially, on cross-examination, the prosecutor asked defendant if he was a convicted felon. Defendant answered that he had not been convicted of anything. Thereupon, the following exchange occurred:
Q. You have never been convicted and placed on probation for a felony offense of receiving stolen goods?
*1120 A. To my knowledge, it must have been when I was younger.
Q. Have you ever been convicted in City Court of any offenses?
A. Once.
Q. Are you sure it wasn't twice?
A. Well, I was only in court over there once.
Q. I am going to show you the minutes from the City Court of Houma, one dated 3/18/81 and one dated January 23, 1986. Take your time, see if you can jog your memory. Now do you remember being in City Court a couple of times?
A. Well, I was in there, it was one day and then I was back another time.
Q. All right. So, that is two times.
A. Well, I just paid a fine.
Q. All right. What about this time? So, there is another time right?
A. I thought it was the same charges because it was criminal mischief.
Q. Criminal mischief, what were you doing?
At this juncture, defense counsel entered an objection, stating that defendant only had to answer whether or not he had been convicted of a crime. The prosecutor countered that he was entitled to question defendant as to the circumstances that gave rise to the criminal mischief conviction. The trial court overruled the defense objection, and the prosecutor then asked defendant if he had peeped into a woman's window. Defendant denied he had peeped into anyone's window, but admitted he had pled guilty to the criminal mischief. When the prosecutor again asked defendant if he was a convicted felon and also asked defendant if he was on probation or had ever had a probation officer, defendant replied in the negative. The record reflects that the prosecutor then cross-examined defendant on other matters not related to this assignment, followed by a brief recess of the trial court. After the recess, defendant's cross-examination resumed, with the following exchange:
Q. Mr. Ferguson, on October 27, 1980, did you appear in court with the charge of receiving stolen things?
A. Yes, sir, I did.
Q. And was that charge reduced to the crime of theft under a (sic) $100.00, to which you plead guilty?
A. Yes, sir.
Q. Were you in Court on April 12, 1979, a certified copy, plead guilty to Accessory After the Fact?
A. Yes, sir.
Q. Now, these two matters were in District Court, not City Court, correct? Is that correct, that was in the big courthouse not the little courthouse?
A. Yes.
Q. That is all of the questions I have, Mr. Ferguson.
Immediately thereafter, on redirect examination, the following colloquy took place:
Q. Steven, Mr. Rhodes asked you earlier about being convicted of a felony, possession of stolen things. Isn't it true as he just showed us, that's false. That what you actually plead to was a misdemeanor charge of theft under $100.00?
BY MR. RHODES:
I will stipulate to that, Your Honor. That it was a felony charge reduced to a misdemeanor, that he plead guilty to. I will stipulate to that.
BY THE COURT:
All right.
BY MR. CHAMPAGNE:
That is all I have. I don't have any further questions.
BY THE COURT:
You can step down, sir.
Evidence of prior convictions is permitted for impeachment purposes by LSA-R.S. 15:495, which provides:
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility *1121 is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
In impeaching the credibility of a defense witness, the state may not only establish prior convictions of the witness, but may also cross-examine that witness as to the details of the offense in order to show the true nature of the offense. State v. Jackson, 307 So.2d 604 (La.1975). This rule has been extended to defendants who take the stand in their own behalf. State v. Neslo, 433 So.2d 73 (La.1983). However, care must be taken to avoid prejudice to the rights of the accused by expansive reference to details of a former conviction. State v. Lester, 482 So.2d 15 (La.App. 1st Cir.1985). The extent to which an inquiry into prior convictions is permitted depends on the facts of each case, and the trial court has great discretion to control the length and depth of the examination. State v. Neslo, supra; State v. Miller, 449 So.2d 1361 (La.App. 1st Cir.1984), writ denied, 450 So.2d 965 (La.1984).
Herein, defendant's only basis for objection articulated to the trial court was to the state's questioning as to the details of defendant's prior criminal mischief conviction. We find that the prosecution's questioning concerning the details of that conviction was within permissible limits; and, thus, we cannot say that the trial court abused its discretion in overruling defendant's objection.
In brief, defendant argues additional grounds for objection not articulated to the trial court and argued for the first time on appeal. He essentially argues that his prior convictions were for misdemeanors, that the prosecution's questioning as to his status as a convicted felon was intended to "brand" him as a convicted felon in the eyes of the jury, and that he was prejudiced thereby. Since these additional grounds were not properly raised at the trial court level, they are not properly before this Court on appeal. See State v. Hawkins, 496 So.2d 643 (La.App. 1st Cir. 1986), writ denied, 500 So.2d 420 (La.1987). Moreover, the state made clear in its stipulation during redirect examination of defendant that he was charged with a felony, but pled guilty to a misdemeanor. Hence, we find no prejudice.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant claims that the trial court erred by overruling his objection to the prosecutor's questioning of defendant regarding the clothes defendant had worn during the period of time from the alleged attack of the victim on October 1 until defendant's arrest on October 22.
Consistent with the testimony of several other defense witnesses, defendant testified on direct examination that he was wearing a lavender pull-over shirt and blue jeans on October 1, 1986. Thereafter, on cross-examination, defendant further testified that he was wearing the same shirt on the day of his arrest for the instant offenses. The testimony was inconsistent with the victim's description of the clothing worn by her assailant. Defendant also testified that, during the period October 1 through October 22, he had worked on automobiles belonging to various individuals who would sometimes let him use their clothes. When the prosecutor asked defendant what happened if one of those individuals' clothes did not fit defendant, defense counsel objected to the question on the basis of relevancy. The trial court overruled the objection, and defendant explained that the people he encountered were larger than him and that, hence, he was not prevented from wearing their clothes.
Relevant evidence is defined by LSA-R.S. 15:441 as follows:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.

*1122 Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
In questions of relevancy, much discretion is vested in the trial judge. State v. Andrews, 451 So.2d 175 (La.App. 1st Cir. 1984), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984).
The record reflects that the evidence presented by the defense in regard to the clothing that defendant was allegedly wearing on the day of the offenses was introduced to negative the commission of the offenses by showing that defendant's clothing did not match the clothing the victim had described her attacker as wearing. Therefore, the prosecutor's cross-examination regarding defendant's clothing was relevant. Hence, we find no abuse of discretion in the trial court's ruling.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. FIVE:
By means of this assignment, defendant contends that the evidence was insufficient to convict him of the instant offenses.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Tate, 506 So.2d 546 (La. App. 1st Cir.1987), writ denied, 511 So.2d 1152 (La.1987). This standard is codified in LSA-C.Cr.P. art. 821.
LSA-R.S. 14:42.1(A) defines forcible rape as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
LSA-R.S. 14:89.1 provides, in pertinent part, that aggravated crime against nature is crime against nature committed "[w]hen the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution." Crime against nature is defined in LSA-R.S. 14:89, in pertinent part, as follows:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex ... except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Initially, we note that the testimony of the victim alone is sufficient to prove the elements of an offense. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). In finding defendant guilty of both of the instant offenses, it is obvious the jury believed the victim. The credibility of the victim's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, supra. Herein, the victim's testimony showed that defendant abducted her while she was walking near a school, that defendant told the victim that he was armed with a gun, and that he would "blow [her] brains out" if she did not do what he said. The victim testified that she feared for her life. After defendant forced the victim to perform oral sex, he raped her vaginally. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant *1123 committed the crimes of forcible rape and aggravated crime against nature.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. SEVEN:
By means of this assignment, defendant contends that the trial court erred by imposing excessive sentences. Defendant argues that the imposition of consecutive sentences was not justified in this case.
Article 1, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La. 1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, supra. In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, supra. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982).
LSA-C.Cr.P. art. 883 provides, in pertinent part as follows:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
However, even if convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Other factors must be taken into consideration in making this determination. For instance, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Jett, 419 So.2d 844 (La. 1982); State v. Atley, 470 So.2d 621 (La. App. 1st Cir.1985).
Forcible rape carries a penalty of imprisonment at hard labor for not less than five nor more than forty years and at least two years of the sentence must be imposed without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:42.1. Aggravated crime against nature is punishable by imprisonment at hard labor, without benefit of suspension of sentence, probation, or parole, for not less than three years nor more than fifteen years. LSA-R.S. 14:89.1. For his forcible rape conviction, defendant was sentenced to fifteen years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence. For his aggravated crime against nature conviction, defendant received a sentence of six years at hard labor, without benefit of suspension of sentence, probation, or parole. The trial court ordered that the sentences be served consecutively.
In its reasons for imposition of defendant's sentences, the trial court noted that defendant's prior criminal record included only misdemeanor convictions. The court referred to the instant offenses as brutal, senseless, crimes of violence. The court also noted that the offenses were committed against a small, defenseless, female victim by a large, much older male. The court stated that it found that there was no provocation, reason, or justification for these offenses. The court further noted that the victim was seventeen years old at the time of the offenses and that she never had a chance to escape given the relative sizes and ages of the victim and defendant. The court noted that the instant offenses were cowardly, vicious, and violent acts greatly meriting defendant's removal from society.
In imposing the instant sentences, the trial court stated that it found that, during *1124 a period of suspended sentence or probation, defendant would commit another crime. Additionally, the court stated that lesser sentences would certainly deprecate the seriousness of defendant's crimes.
In the instant case, notwithstanding defendant's first felony offender status, the nature of these senseless and violent offenses indicates dangerous propensities on defendant's part which pose an unusual risk to public safety. Under these circumstances, we cannot say that the instant sentences are excessive despite their consecutive nature, particularly since defendant faced a possible sentence of forty years on the forcible rape conviction alone. See State v. Atley, supra.
This assignment lacks merit.

CONCLUSION
For the above reasons, the convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Defendant briefed two additional arguments not formally assigned as error. In one of those arguments, defendant asserted that State Exhibit one, a medical report, should not have been admitted into evidence because the physician who allegedly prepared the report was unavailable for cross-examination by defendant. In the other additional argument, defendant asserted that (in contravention of LSA-C.Cr.P. art. 774) the prosecutor testified, during his closing argument to the jury, as to the meaning of medical language contained in State Exhibit one. However, in accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this Court will not consider any argument which is neither assigned as error nor related to error patent on the face of the record. See State v. Spears, 350 So.2d 603 (La.1977); State v. Overton, 337 So.2d 1201 (La.1976).
[2] The victim's testimony at defendant's January 14-15, 1988, trial revealed that she was eighteen years old at the time of the trial.