517 So.2d 266 (1987)
STATE of Louisiana
v.
Patrick HOWARD.
No. 87 KA 0417.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
*267 Allen J. Myles, Asst. Dist. Atty., for plaintiff/appellee.
C. Jerome D'Aquila, New Roads, for defendant/ appellant.
Before WATKINS, CARTER and CHIASSON,[*] JJ.
CARTER, Judge.
Defendant, Patrick Howard, was charged by bill of information with armed robbery, in violation of LSA-R.S. 14:64. He was tried by a jury, which returned the responsive verdict of guilty of attempted armed robbery. The trial court imposed a sentence of twenty-four and one-half years at hard labor. Defendant appealed, designating four assignments of error and briefing three. Assignments of error not briefed on appeal are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
Defendant was charged with the armed robbery of Bradley Diez, the owner and manager of White's Auto Store in Plaquemine, Louisiana. The incident occurred shortly after the store closed on Christmas Eve, 1982. As Mr. Diez and his wife left the store, Mr. Diez carried a briefcase containing checks and currency in the approximate amount of $9,500.00, the store's gross receipts. The victim drove to his home nearby. Defendant and three companions followed the victim to his residence. While the others waited in the car, defendant ran into the garage as the victim pressed a *268 button to close the automatic door. Defendant pointed a gun at the victim, shook him and demanded the victim's money. Defendant was able to flee from the garage with the briefcase before the door closed. By police estimates, the robbery was completed in less than four seconds.
In the course of their investigation, Iberville Parish deputies received information connecting defendant with this offense. Defendant initially denied participation; however, eventually gave a statement detailing his involvement in the robbery. He told the officers that he threw the briefcase into the Intracoastal Canal in West Baton Rouge Parish. Various store papers (including checks and invoices) and the briefcase were discovered under the canal bridge in Port Allen. Currency in the amount of approximately $6,500.00 was recovered from a chair in defendant's bedroom. The weapon was never located.

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, defendant contends that the court erred by restricting his right of cross-examination of Medgar Jenkins, a state witness. Defendant contends that the court should have permitted him to determine whether any charges were pending against Jenkins in order to show that he might be motivated to testify in a particular manner.
After the state called Jenkins, defendant requested a hearing out of the presence of the jury to allow the court to instruct Jenkins about his rights against self-incrimination. The state assured the court that the witness was not charged in connection with the instant offense. The court then questioned the witness, who agreed that he was not charged with an offense connected to the robbery of Diez. However, the witness admitted that one charge was pending on an unrelated matter. Defendant argued that Jenkins could expose himself to a charge of conspiracy or accessory after the fact by his testimony. The court then cautioned him not to answer any question that might incriminate himself. The jury was returned.
Thereafter, the witness testified that one week before the robbery, he saw and heard defendant ask his brother for the use of a gun to "hit" White's; his brother refused to provide the weapon. Jenkins further testified that, after the robbery, defendant told him where the money from the robbery was hidden and related how the robbery had been accomplished. In addition, Jenkins specifically testified that no one had promised anything to him for his testimony, nor had he been threatened or coerced.
On cross-examination, the witness testified that charges brought against him for accessory to a burglary or possession of stolen goods had been dropped by the state. Defendant then asked if any charges were currently pending against him in Iberville Parish. The state objected on the grounds that the witness could be impeached only by evidence of crimes for which he had been convicted. The court sustained the objection. Defendant did not protest the court's ruling. The witness then testified that he had not been promised lenient treatment by anyone if he agreed to testify against defendant; and that no one had promised that any possible future prosecutions would be considered in light of his testimony.
Defendant now submits that his constitutional right of cross-examination was abridged by the court's ruling prohibiting him from asking Jenkins if other charges were pending against him in the parish. He argues that the motivation of a witness to testify is a legitimate area of cross-examination that was denied by the trial court's ruling. He contends that the court's restriction must result in the automatic reversal of his conviction.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right and applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In addition, this right to confrontation is found in LSA-Const. Art. 1, Sec. 16.
*269 In order to cross-examine a witness effectively, a defendant must be afforded the opportunity to demonstrate any bias or self-interest which is attached to a witness's testimony. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Rankin, 465 So.2d 679 (La.1985). This right is also provided by LSA-R.S. 15:492, which provides as follows:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
A cross-examiner is allowed wide latitude in exploring any facts that might support an inference of bias. State v. Rankin, supra. The possibility that the prosecution may have leverage over a witness due to that witness's pending criminal charges is recognized as a valid area of cross-examination. State v. Rankin, supra; State v. Jenkins, 476 So.2d 475 (La.App. 1st Cir. 1985).
In the instant situation, the witness explicitly testified on both direct and cross-examination that he had not been coerced or threatened to testify and that he was not testifying as the result of a promise of leniency. However, the jury was not aware that an unrelated charge was pending against the witness and, thus, was not able to make an independent determination of whether or not his testimony might have been influenced by this factor. Therefore, the court erred by restricting defendant's cross-examination into charges that were pending in order to show bias or interest. Cf. State v. Jenkins, supra.
However, we do not find that the error herein warrants reversal. The United States Supreme Court has recently determined that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether, assuming that the damaging potential of the cross-examination was fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. The court concluded that whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These include the importance of the witness's testimony in the prosecution's case, whether the testimony is cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. Delaware v. Van Arsdall, supra.
The state's case against defendant was based upon his confession, as related to the jury by Detective Edward Engolio.[1] Because of this confession, and other corroborating evidence supplied by John Francis, one of the men who waited in the car while defendant committed the robbery, the evidence supplied by Jenkins was not crucial to the prosecution's case. Since Jenkins was not the only witness who testified about defendant's participation in the offense, his credibility was not a crucial issue in this case and his testimony was essentially cumulative. Moreover, defendant was permitted to question the witness about promises for future leniency in possible prosecutions; Jenkins testified that no such promises had been made. Thus, defendant's right of cross-examination was not extensively curtailed.
We find, therefore, that the trial court's improper restriction of defendant's cross-examination was harmless error. LSA-C. *270 Cr.P. art. 920. This assignment of error has no merit.[2]

ASSIGNMENT OF ERROR NO. TWO
By assignment of error number two, defendant submits that the trial court erred by permitting the state to introduce hearsay testimony. He claims that the evidence presented by John Francis, a passenger in defendant's car on the night of the offense, should not have been found to be a part of the res gestae.
Francis testified that at approximately 5:00 p.m. on the night of the offense, he went for a ride with defendant and defendant's brother, Lionel Howard, in defendant's car. They soon stopped and picked up a third passenger, Stanley White. Francis related that he rode in the back seat with Lionel as defendant drove to White's Auto Store. He testified that the purpose of the trip was never discussed. Francis claimed they waited in the parking lot of the store for approximately fifteen minutes before driving to a nearby subdivision. In front of a house on a side street, defendant pulled over, asked Stanley White to drive, and got out of the car. Defendant returned three to five minutes later with a briefcase and ordered White to drive off. Francis further testified that, as defendant opened the briefcase, Lionel Howard exclaimed that he had committed an armed robbery. Defendant objected to the evidence of Lionel Howard's exclamation as hearsay testimony. The state argued that it was a part of the res gestae. The court overruled defendant's objection.
In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime, if the continuous chain of events is evident under the circumstances. LSA-R.S. 15:447, 15:448; State v. Kimble, 407 So.2d 693 (La.1981).
The continuous chain of events is evident under the circumstances presented herein. Francis had previously testified that the purpose for the expedition had not been discussed. Defendant left the car, returning three to five minutes later with a briefcase containing money. Francis's testimony indicates that the exclamation by defendant's brother was a spontaneous declaration brought about by his realization that a crime had been committed. By defendant's actions, Francis and Lionel Howard became witnesses to the offense and participants in this successful escape. Thus, the utterance by Lionel Howard constituted part of the res gestae.
Moreover, even if the utterance were not a part of the res gestae, any error caused by its admission was harmless. The victim testified that he had been robbed at gunpoint at his home in a subdivision near the store. Testimony by Jenkins established that defendant planned the offense at least one week before its execution and later told Jenkins that he had completed it and where the money was hidden. Francis testified about defendant's actions on the night of the offense. Finally, defendant confessed to the crime. We conclude, therefore, that the evidence of defendant's guilt was overwhelming. Thus, if the admission of the statement by Francis were erroneous, under the circumstances it was harmless. See State v. Billiot, 421 So.2d 864 (La.1982). This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. FOUR
By this assignment of error, defendant submits that the sentence imposed, twenty-four and one-half years at hard labor, is excessive. He contends the court erred by *271 penalizing defendant because the jury returned the responsive verdict of attempted armed robbery and erred by considering defendant's history of arrests in determining an appropriate sentence.
Initially, we note that the sentence imposed is illegal. A defendant convicted for attempted armed robbery must be sentenced in the same manner as an accused convicted of armed robbery, that is, without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:27, 14:64; State ex rel. Sullivan v. Maggio, 432 So.2d 854 (La.1983). Although both the state and defendant assume that the sentence was imposed without these conditions, the transcript of the proceeding reflects that the court did not specifically order that the sentence be served in this manner. The sentence is, therefore, illegally lenient.
When the trial court has imposed an illegal sentence, either the defendant or the prosecutor may move to correct the sentence in the trial court, or the trial court may raise the question on its own motion at any time, even after the defendant has begun to serve the sentence or after the conviction and sentence have been affirmed on appeal. LSA-C.Cr.P. art. 882; State v. Fraser, 484 So.2d 122 (La.1986). When the defendant alone has appealed and the error is to his detriment, the role of this court is limited to simply taking note that an illegal sentence was imposed. See State v. Fraser, supra.
However, it appears that the court incorrectly calculated the range of sentences that it could impose. The maximum sentence statutorily authorized for the offense of attempted armed robbery is forty-nine and one-half years. LSA-R.S. 14:27, 14:64. See State v. Sullivan, 352 So.2d 649 (La. 1977). In its reasons for the imposition of the instant sentence, the trial court noted as follows:
This is your first offense. Attempted armed robbery, found by the jury. The Court heard this case. It was a clear cut case of armed robbery rather than attempted armed robbery. However, the jury came back with that verdict. Had they come back with armed robbery, I would have given you a sentence of twenty-one years. Coming back with attempted armed robbery, I'm limited to twenty-four and a half years....

* * * * * *
You have a lot that could be done for you and a lot to show that you would be a detriment to society if I kept you in it. I'm going to sentence you to twenty-four and a half years, Louisiana Department of Corrections, the maximum sentence in this case.
Because it appears that the trial court imposed the sentence based upon an incorrect calculation, we conclude that the appropriate action to be taken by this court is to vacate the sentence and remand for resentencing. We note, as well, that defendant's contention that the court penalized him because the jury returned a verdict of guilty of attempted armed robbery appears to have merit in light of the court's statement that it would have imposed a lesser sentence if the jury had actually convicted him of the completed offense. Therefore, we direct the trial court to address this issue in its reasons for sentencing after remand.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.
[1] Although the confession was videotaped and the recording was shown to the jury, for reasons unknown to this court, the state specifically refused to introduce the exhibit. Further, the state acquiesced in defendant's request that the jury be instructed not to consider evidence that was not admitted; and the court did do so. However, in his testimony, Det. Engolio related the contents of defendant's confession.
[2] We note that defendant did not contest the court's ruling, based on the unavailability of information about pending charges for impeachment purposes. Thus, defendant did not present his claim relative to the importance of this information to show bias or interest to the trial court. Accordingly, any error could be considered waived due to the absence of a contemporaneous objection. See State v. Brown, 504 So.2d 1086 (La.App. 1st Cir.1987); State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.), writ den., 433 So.2d 711 (La.1983); State v. Johnson, 404 So.2d 239 (La.1981), cert. den., 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).