572 So.2d 108 (1990)
STATE of Louisiana
v.
Earl Fitzgerald HAWKINS.
No. KA 89 1736.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*110 T. Barry Wilkinson, E. Neal Harmon, Jr., Asst. Dist. Attys., Port Allen, for the State.
C. Jerome D'Aquila, New Roads, for defendant Earl Fitzgerald Hawkins.
Before COVINGTON, C.J., and LANIER, ALFORD, JJ.
COVINGTON, Chief Judge.
Earl Fitzgerald Hawkins was charged by bill of information with armed robbery, in violation of LSA-R.S. 14:64. He pled not guilty and, after a trial by jury, was found guilty as charged. Defendant was sentenced to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. This court granted defendant's request for an out-of-time appeal. See State ex rel. Earl Hawkins v. State, KW 89 0869, July 27, 1989. The following were assigned as errors:
1. Prior to trial of the above matter, the defendant filed a motion to suppress the photo lineup, which motion was denied. Defendant designates this ruling of the court as assignment of error number one.
2. During the trial, defense counsel asked that a juror be dismissed for cause, which motion was denied. Defendant designates this ruling of the trial court as assignment of error number two.
3. During the trial, an objection was made by the defendant in reference to the introduction of the photographs of the lineup, which objection was overruled, and the photographs were allowed to be introduced into evidence. Defendant now designates this ruling of the trial court as assignment of error number three.
4. During the trial, the defense moved for a mistrial predicated upon Art. 775(3) of the Code of Criminal Procedure. The motion for mistrial was aimed at the introduction of photographs during the testimony of Det. Don Baucum. The motion for mistrial was denied. Defendant now designates this ruling of the trial court as assignment of error number four.
5. During the trial, an objection was made by the State in reference to a question asked to Det. Don Baucum under cross-examination, which objection was sustained by the trial court. Defendant now designates this ruling of the trial court as assignment of error number five.
*111 6. During the trial, the State was allowed to ask questions on redirect examination of Det. Don Baucum, but defendant was denied a chance to recross on the question asked. Defendant now designates this ruling of the trial court as assignment of error number six.
7. Defendant shows that the verdict is contrary to the law and evidence and designates the verdict of the jury as assignment of error number seven.
8. Defendant shows that the sentence of the trial court was excessive and designates this as assignment of error number eight.
Assignment of error number five was not addressed in defendant's brief to this Court and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On the night of May 3, 1983, at about 12:30 a.m., an armed robbery occurred at the Delta Fuel Stop in Port Allen, Louisiana. There were two cashiers on duty that night, and there were also a number of customers present in the store. The evidence adduced at trial indicated that there were two perpetrators. One had a pillow case over his head, and the other one was carrying a handgun. The perpetrator with the gun entered the store and said, "Freeze, this is a holdup." He pointed the gun at one of the cashiers, went behind the counter and told her to open the register. After taking the cash therefrom, both perpetrators fled.
Several customers who were present on the evening in question witnessed the robbery and observed the perpetrators. One customer went outside after the crime occurred and saw the perpetrators run behind an adjacent building. When he was leaving the gas station in his vehicle, the witness saw a green Chevrolet Camaro coming from behind the adjacent building at a high rate of speed. The witness was able to see into the Camaro and observe the man who had just committed the robbery, along with his cohort. The witness was also able to see the license tag number on the Camaro, and he exited the highway and called the authorities.
During the robbery, another customer was able to closely observe the perpetrator with the handgun. Approximately two weeks after the offense, he met with law enforcement officials and identified defendant herein from a photographic lineup.
Det. Don Baucum of the West Baton Rouge Parish Sheriff's Office investigated the crime herein. He determined that the license tag number given by one of the witnesses was registered to a Jacqueline D. Smith of 979 Avenue C in Port Allen, Louisiana. The detective also determined that defendant's address was 979 Avenue C in Port Allen, Louisiana. Det. Baucum also constructed several photographic lineups and met with several witnesses. Thereafter, defendant was identified as one of the perpetrators herein.

CHALLENGE OF JUROR FOR CAUSE
Through his second assignment of error, defendant contends that the trial court erred in denying his challenge for cause of a prospective juror who was married to a law enforcement officer. Defendant argues that the prospective juror was also friendly with many law enforcement officials and, therefore, it would be reasonable to conclude that she would not be impartial.
The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality. See LSA-C.Cr.P. art. 797(2). It is well-settled that relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether or not the prospective juror could assess the credibility of each witness independent of his or her relationship with members of law enforcement. State v. Collins, 546 So.2d 1246, 1253 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). The trial court is vested with broad discretion in ruling on a challenge for cause, and that ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Jones, 526 So.2d 1374, 1379-1380 (La.App. 1st Cir.1988).
*112 The prospective juror herein testified that her husband was an auxiliary police officer with the Police Department in Addis, Louisiana. She also indicated that he was an auxiliary deputy for the West Baton Rouge Parish Sheriff's Office. She further admitted that her husband was friendly with many law enforcement officials. After these facts came to light during voir dire, the trial court instructed this prospective juror to "search herself" deeply. The trial court inquired of the prospective juror whether or not her judgment in the case would be affected, given the fact that her husband was a law enforcement officer. To this she answered, "No." She further indicated that she would judge the case only on the evidence adduced at trial. She also stated that she would not be embarassed to find defendant not guilty nor would she feel pressured by her husband not to do so. Further, the prospective juror did not know any of the witnesses in this case. She also indicated that she knew she could not go home and talk to her husband about the case. Finally, she affirmed that she could render an impartial verdict based solely upon the law and the evidence.
Based upon our review of the record herein, we cannot conclude that the trial court's denial of defendant's challenge for cause of this juror was an abuse of its discretion. Accordingly, this assignment of error is without merit.

MOTION TO SUPPRESS PHOTOGRAPHIC LINEUP
Through his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress the pretrial photographic lineup.[1] Defendant alleges that the lineup was suggestive.
Defendant has the burden of proof on a motion to suppress an out-of-court identification. LSA-C.Cr.P. art. 703(D). In order to suppress an identification, defendant must prove (1) that the identification was suggestive, and (2) that there was a likelihood of misidentification in the identification procedure. State v. Sylvas, 558 So.2d 1192, 1199 (La.App. 1st Cir.1990). An identification procedure is unduly suggestive if, during the procedure, a witness's attention is focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). A strict identity of characteristics is not required; rather, a sufficient resemblance to reasonably test the identification is necessary. State v. Lewis, 489 So.2d 1055, 1057 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). It is the likelihood of misidentification which violates a defendant's constitutional rights, not merely the suggestive identification procedure. State v. Guillot, 353 So.2d 1005, 1008 (La.1977).
In determining whether a photographic identification was reliable, the factors to be considered are: (1) the opportunity of the witness to view the criminal at the moment of the crime; (2) the degree of attention of the witness; (3) the accuracy of the prior description of the criminal; (4) the level of certainty of the identification; and (5) the elapsed time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Sylvas, 558 So.2d at 1199. A trial court's determination *113 of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. State v. Green, 471 So.2d 1049, 1052 (La. App. 1st Cir.1985).
Both victims and two eyewitnesses who were present during the robbery participated in various identification procedures. Neither victim had an opportunity to gather a careful observation of the perpetrators. One perpetrator's face was covered. The victim who was confronted by the armed, unmasked perpetrator testified that all she could see "was his eyes and the top of his head ... over the top of a gun ..." However, two witnesses, Terry Dodd and Steve Chellette, had ample opportunity to view one of the assailants. Chellette stated that he was at the register checking out when he heard "someone say something." He looked up, and the hooded assailant "had the lady at the cash register." The assailant then pushed the victim back and said, "Open up the register." He then pushed her aside and took the money from the register. Chellette indicated that he saw defendant herein with a .22 caliber snub-nose revolver in his hand. After the perpetrators completed the robbery and ran out of the store, Chellette verified that the victims were not physically harmed and noted that they were in the process of contacting the authorities; thereafter, he left. Chellette was traveling as a passenger in a van when he noticed the suspects' vehicle speeding away from the scene. As the suspects' vehicle passed, he was able to make a mental note of the license plate number and he reported that number to the authorities. Another witness, Terry Dodd, stated substantially the same details as Chellette; however, he never saw the suspects' vehicle.
Det. Don Baucum of the West Baton Rouge Sheriff's Office testified that he showed a mug shot book to Chellette. There were over one hundred photographs in this book. Although Chellette did not identify defendant's picture in this book, Baucum stated that defendant's photo was not located therein. Baucum also showed the mug shot book to Terry Dodd who also failed to point out a photograph which he thought resembled the perpetrator. Baucum further testified that he constructed a photographic lineup by using driver's license pictures from the Louisiana State Driver's License Bureau. He placed six driver's license photographs of black males inside a manila folder. When he showed this lineup separately to both Chellette and Dodd, each chose defendant's picture without hesitation. Additionally, although one of the victims admitted she could not distinguish defendant's picture from the other five photographs in the lineup, she did participate in a live lineup prior to trial and testified that the look in defendant's eyes "gave her a hunch" that he was the perpetrator.
Given the facts that both witnesses had ample opportunity to view defendant during the commission of the crime and that they were standing directly next to the defendant while he committed the crime, their lack of hesitation in choosing defendant out of the photographic lineup, and the fact that their identifications of defendant were made a few weeks after the crime occurred, we do not find that the trial court erred in allowing the witnesses to make an in-court identification of defendant at trial. Further, we do not find that the trial court erred in denying defendant's motion to suppress the results of the pretrial identification procedures. This assignment of error is without merit.

ADMISSIBILITY OF PHOTOGRAPHS
Through his third and fourth assignments of error, defendant alleges as error the introduction into evidence of the photographs from the lineup; and he also urges that the trial court erred in denying his motion for a mistrial based upon a legal defect in the proceedings due to a lack of a proper foundation for admitting the photographs into evidence. First, where a key issue is defendant's identity as the perpetrator, the State is allowed to negate any reasonable probability of misidentification. State v. Buie, 477 So.2d 157, 162 (La.App. 1st Cir.1985). Indeed, where an allegedly *114 suggestive photograph is relevant, it may be properly admitted into evidence as a predicate to show the fairness of the prior photographic identification of defendant. State v. Mathis, 261 La. 564, 260 So.2d 625, 627 (1972). A proper foundation for admission into evidence of a photograph is laid when a witness having personal knowledge of the subject depicted therein identifies it as such. State v. Bibbens, 525 So.2d 255, 258 (La.App. 1st Cir.1988). The photograph need not be identified by the person who took it to be admissible into evidence. State v. Bibbens, 525 So.2d at 258.
The granting of a mistrial is within the discretion of the trial court; and denial of a mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Williams, 471 So.2d 255, 259 (La.App. 1st Cir.), writ denied, 475 So.2d 1102 (La.1985). A motion for mistrial under LSA-C.Cr.P. art. 775 should be granted only where a defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Williams, 471 So.2d at 259.
During Detective Baucum's testimony regarding the construction of the photographic lineup, defense counsel objected on the grounds that a proper foundation for admitting the photographs had not been laid. The trial court overruled defendant's objection; and defense counsel then moved for a mistrial pursuant to LSA-C. Cr.P. art. 775(3), claiming that there was a legal defect in the proceedings. He argued that the admission of the photographic lineup violated provisions of the Louisiana Bureau of Criminal Identification and Information. See La.R.S. 15:575, et seq. Defense counsel further argued that Baucum may have assembled the pictures, but he did not photograph them. He asserted that the person or institution that had the photographs in their possession should have been called to testify.
The trial court found that LSA-R.S. 15:575, et seq., applies to criminal history records and information including identification, descriptions, arrests, detentions, indictments, bills of information, or any formal criminal charges along with the disposition thereof. It further noted that the above terms do not include intelligence or investigatory purposes, nor does it include any identification information which does not indicate involvement of the individual in the criminal justice system. The court concluded that a driver's license photograph does not involve anyone with the criminal justice system. Accordingly, the trial court concluded that LSA-R.S. 15:575, et seq., did not apply herein; and, therefore, there was no legal defect in the proceedings under this contention. We find no error in the trial court's ruling.
Defendant further contends that it was necessary for the person or agency responsible for the production of the driver's license photograph to testify at trial. This argument is without merit. See State v. Bibbens, 525 So.2d at 257-258. The admission of evidence and the granting or denial of a motion for mistrial are within the trial court's sound discretion and will not be overturned on appeal absent an abuse of that discretion. We find no abuse of discretion; and, therefore, we find the above assignments of error to be without merit.

LIMITATION OF CROSS-EXAMINATION
Through his sixth assignment of error, defendant avers that the trial court erred in refusing his request to recross-examine one of the State's witnesses.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right and applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In addition, this right to confrontation is found in Louisiana Constitution Art. I, § 16. State v. Howard, 517 So.2d 266, 268 (La.App. 1st Cir.1987). Although the confrontation clause has been construed to hold that a primary interest secured by it is the right of cross-examination, nevertheless, cross-examination is always subject to the broad discretion of a trial court to *115 preclude repetitive and unduly harassing interrogation. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Senegal, 316 So.2d 124, 126 (La. 1975). The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial court, provided that the opportunity be not denied to recross on the new matter brought out on redirect. La.R.S. 15:281.[2]
While on cross-examination, Det. Baucum testified as follows:
Q Now, Officer Baucum, did you take any fingerprints at the scene?
A There were no fingerprints available.
Q My question was, sir, did you take any fingerprints?
A No, I did not.
Q Okay. Now, what was the cash register made of, what kind of material was it made of?
A It's a plastic, metallic.
Q Now, did you run any fingerprints on a gun or knife or any other kind of weapon?
A Never found a gun and never found a knife.
Q Sir, please answer my question. Did you take any fingerprints off of those items?
A Obviously I did not; there was none ever recovered.
Q So your answer is no.
A That's correct.
* * * * * *
While on redirect examination, Det. Baucum testified as follows:
Q Why didn't you take any fingerprints at the scene, Detective Baucum?
A I was told by the victim
DEFENSE COUNSEL: Objection.
Q Did you have any reasons for not taking fingerprints at the scene?
A Yes, sir, I did.
Q Okay.
PROSECUTOR: You're excused.
DEFENSE COUNSEL: You have to tender him first.
THE COURT: Step down.
PROSECUTOR: Excuse me.
DEFENSE COUNSEL: You didn't tender him to me.
THE COURT: Well, he is on redirect and that's the end of the story. Step down, Detective Baucum.
PROSECUTOR: You've had him. He's been under cross-examination.
DEFENSE COUNSEL: Yes, but I didn't get a chance to redirect him. He had him on redirect. He asked him those last questions and I'm supposed to have an opportunity
THE COURT: You can leave, Detective Baucum. Direct examination, cross-examination, and redirect. That's it.
DEFENSE COUNSEL: Your Honor, after he redirects I have no opportunity to cross him on the redirect?
THE COURT: Not when he doesn't go into anything that wasn't asked, you know. He asked only from what you went into. That's it. That's the rules of evidence and I control it. And that's it.
DEFENSE COUNSEL: We assign error, Your Honor.
THE COURT: Make your objection first.
DEFENSE COUNSEL: We object to the court's ruling and assign error.
THE COURT: I wish you would put your reasons down.
DEFENSE COUNSEL: Your Honor, we think that in a normal order of procedure for a trial that after the State has questioned he's tendered to the Defense for questioning.
THE COURT: Did he not give you cross-examination?
DEFENSE COUNSEL: I did cross him.
THE COURT: Proceed.
PROSECUTOR: The State rests, Your Honor.
Herein, there were no new issues raised on redirect examination; therefore, recross-examination was not proper. See LSA-C.Cr.P. art. 17; LSA-R.S. 15:275 and *116 281. Accordingly, the trial court's ruling was correct; and this assignment of error is without merit.

SUFFICIENCY OF THE EVIDENCE
Through his seventh assignment of error, defendant avers that the verdict was contrary to the law and the evidence. We take this to be a challenge to the sufficiency of the evidence.[3] Although defendant should have proceeded by way of a motion for post-verdict judgment of acquittal, we will consider the claim since it was briefed pursuant to a formally assigned error. State v. Jones, 496 So.2d 638, 640 (La.App. 1st Cir.1986).
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Prior to its amendment by Act 70 of 1983 (which became effective August 30, 1983), LSA-R.S. 14:64 provided that armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, or armed with a dangerous weapon. (Emphasis added) The crime herein took place on May 3, 1983. Therefore, the State had the burden of proving the following elements: that the defendant had a specific intent to deprive another permanently of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon. See State v. Payne, 540 So.2d 520, 523 n. 1 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
The trier of fact heard the testimony of the two victims concerning the details of the crime. Further, two witnesses positively identified defendant as the perpetrator of that crime. Although defendant called several alibi witnesses, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). The determination of the credibility of witnesses is a matter of the weight of the evidence. This determination, being a question of fact, is not subject to appellate review. State v. Payne, 540 So.2d at 524.
Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have concluded beyond a reasonable doubt that the State proved all the elements of armed robbery (as that crime was defined before August 30, 1983) and that the defendant was guilty of that offense. This assignment of error lacks merit.

EXCESSIVE SENTENCE
Under his eighth assignment of error, defendant contends that, although he had a pending criminal charge of armed robbery in another parish, this conviction was his first; and, therefore, the twenty year sentence imposed herein was excessive in light of LSA-C.Cr.P. art. 894.1.
Art. I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Payne, 540 So.2d at 524. In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of *117 proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether or not a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. The trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Payne, 540 So.2d at 524.
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Payne, 540 So.2d at 524. The trial court need not recite the entire checklist found in La.C.Cr.P. art. 894.1; however, the record must reflect that the court adequately considered the guidelines. Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Payne, 540 So.2d at 524.
Having been convicted of armed robbery, defendant's sentencing exposure was imprisonment at hard labor for not less than five years nor more than ninety-nine years, without benefit of parole, probation or suspension of sentence. See LSA-R.S. 14:64(B). The trial court sentenced defendant to twenty years at hard labor without benefit of parole, probation or suspension of sentence. A presentence investigation was ordered; and the trial court noted that, although this was defendant's first felony conviction, two counts of aggravated assault had been filed against defendant but were subsequently dropped. Further, there was a pending armed robbery charge against defendant in an adjoining parish. The report noted that one of the victims herein was strongly affected by this incident because the weapon was placed to her head. It was noted that the law specifically states that the conviction herein does not allow parole, probation or the suspension of the sentence. The trial court noted that defendant was in need of correctional treatment and a custodial environment which could most effectively be had by a commitment to an institution. It went on to state that any lesser sentence than twenty years would deprecate the seriousness of this crime. It was noted that part of the cause of defendant's actions had been involvement with drugs, that defendant acted under no provocation, and that the victims' conduct in no way induced or facilitated the commission of this armed robbery. The trial court stated that it believed criminal conduct was likely to recur; and, since defendant had no dependents, imprisonment would not cause any hardships. Finally, the trial court noted that the defendant was to plead guilty on the same date of this sentencing to the other armed robbery charge and understood that defendant would also receive a twenty year sentence on that charge to run concurrent with the sentence imposed herein.
We find the sentence imposed herein was not apparently severe in relation to defendant or the offense committed. We do not find defendant's sentence to be excessive.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Regarding the photographic lineup and the testimony and evidence adduced at trial relating thereto, defendant assigned as error number 1) the trial court's denial of his motion to suppress the photographic lineup, as number 3) the introduction into evidence of the photographs of the lineup, and as number 4) the trial court's denial of his motion for mistrial based upon LSA-C. Cr.P. art. 775(3) due to an alleged legal defect in the proceedings. Defendant addressed assignments of error numbers one and four in his brief to this Court; however, assignment of error number three was not briefed. Normally, assignment of error number three would be considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Additionally, in his brief to this Court, defendant argued (but did not assign as error) that the trial court erred in allowing a witness to make an in-court identification of him based on a pre-trial identification procedure which was allegedly tainted. Normally, alleged errors which are not assigned as error are considered by this Court to be waived. See State v. Ferguson, 540 So.2d 1116, 1118 n. 1 (La.App. 1st Cir.1989). In any event, we reach the merits of all the above contentions because the issues presented therein are interrelated.
[2] Although applicable herein, LSA-R.S. 15:281 was repealed by Sec. 8 of Acts 1988, No. 515.
[3] Defendant also argues under this assignment of error that the State failed to disclose some alleged Brady material. However, this argument was not assigned as error. In accord with the well established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La. 1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988).